[Cite as *State v. Keen*, 2015-Ohio-3200.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 14 CA 25 |
| ZACHARIAH KEEN | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  14 CR 23


JUDGMENT:                    Vacate Sentence and Remand


DATE OF JUDGMENT ENTRY:      August 10, 2015


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

CHARLES T. MCCONVILLE                   NICHOLAS J. TESTA
PROSECUTING ATTORNEY                    DOUGLAS W. SHAW
JOSEPH D. SAKS                          SHAW AND TESTA
ASSISTANT PROSECUTOR                    555 City Park Avenue
117 East High Street, Suite 234         Columbus, Ohio  43215
Mount Vernon, Ohio  43050

*Wise, J.*

**{¶1}** Defendant-appellant Zachariah Keen appeals his conviction and sentence on one count of felonious assault entered in the Knox County Court of Common Pleas Court following a guilty plea.

**{¶2}** Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}** On the night of January 17, 2014, H.H. (D.O.B. 07/24/2013), who was less than six months old at the time, suffered second degree burns to his left arm and third degree burns to his left leg. (T. at 7-8). The skin and muscle tissue on the child's left leg was burned to the bone. As a result of the child's injuries, his leg was amputated. H.H. has since undergone nine surgeries. (T. at 12).

**{¶4}** With regard to the above incident, Appellant Zachariah Keen made three statements to law enforcement officers and one statement to Lisa Lyons, the Adult Court Services Officer who compiled his PSI. In his first two statements to law enforcement, Appellant asserted that although he had been babysitting the child when the child was burned, he was either watching television or in the bathroom when the burn occurred and did not know how the child was burned. (PSI at 3-4). In his third statement to law enforcement, and in his statement to Ms. Lyons, Appellant admitted he had burned the child, but he stated that it had not been intentional. (PSI at 5, 9).

**{¶5}** According to Appellant, he had placed seven ounces of water in the child's bottle and had put the bottle in the microwave to heat it up. (PSI at 5, 9). Then, as Appellant was carrying the bottle to the child, who was in his exerciser, Appellant tripped and spilled the water on the child. (PSI at 5, 9). Appellant stated that he changed

the child's clothes and that the child did not appear to be hurt: his skin was only red and was not blistered. (PSI at 6). Appellant stated that he applied a cold cloth and baby lotion to the affected area. (PSI at 9).

{¶6} On January 28, 2014, members of law enforcement, several representatives of Knox County Children's Services, and two Children's Hospital physicians met at the Children's Hospital Child Advocacy Center in Columbus. (PSI at 6-7). The physicians determined that Appellant's account of the incident was inconsistent with the child's injuries for the following reasons:

{¶7}   (1) there was no sign of a spatter pattern to the child's burns that would be consistent with an accidental spill;

{¶8}   (2) the child's burns were likely caused by a long period of contact with a hot item or liquid;

{¶9}   (3) if the child had been burned by hot water, seven ounces of hot water would not have been enough to cause such severe burns;

{¶10}  (4) if Appellant had dropped water on the child, it would have hit the child's arm before hitting his leg, and the child's arm would have been burned more severely than his leg; and

{¶11}  (5) because of the severity of the burns, blistering would have appeared within seconds following contact with the hot item or liquid. (PSI at 6).

{¶12}  The Children's Hospital physicians advised that the child's burns were the worst the physicians had observed on a living child. (PSI at 6-8). They showed law enforcement images of injuries the child had sustained prior to sustaining the burns to his left arm and left leg: bruising to the child's chin; a fracture to the child's right tibia;

and fractures to the child's ribs. (PSI at 7). The physicians dated the fractures to seven to ten days prior to the child's arrival at Children's Hospital for his burns. *Id*

{¶13} On February 18, 2014, Appellant was indicted on one count of felonious assault, a felony of the second degree, and two counts of endangering children, felonies of the second and third degree.

{¶14} On October 7, 2014, Appellant pleaded guilty to count one, felonious assault.

{¶15} On November 13, 2014, Appellant filed a Sentencing Memorandum, to which Appellant attached twenty-three letters written by Appellant's friends and family members.

{¶16} On November 14, 2014, Appellant filed a motion for an order limiting victim impact statements at sentencing, or, in the alternative, permitting Appellant to call witnesses to offer mitigating evidence on his behalf.

{¶17} This matter came before the trial court for sentencing on November 14, 2014.

{¶18} At the sentencing hearing, defense counsel indicated to the trial court that Appellant wished to call a couple of family members to testify on Appellant's behalf. (T. at 5). However, defense counsel called no such witnesses.

{¶19} The State called two members of the victim's family to testify at sentencing: Lora Miller, and Nicole Williams, the mother of Jessica H., who was the victim's stepmother and who had custody of the victim at the time of sentencing. (T. at 6, 10). Ms. Miller read to the court her letter which Appellant had attached to his Sentencing Memorandum. (T. at 6-10). Ms. Miller testified that Appellant loved the

victim; that Appellant was always there for Ms. Miller and the victim; that Appellant provided for Ms. Miller and the victim; and that Appellant did not intentionally harm the victim. *Id.*

{¶20} Ms. Williams read from a statement which the victim's stepmother had prepared. (T. at 10). The victim was in severe pain after his leg was amputated. (T. at 12). He suffered bruises two and a half months prior to the incident, and his right tibia was fractured ten days prior to the incident. *Id.* The victim had night terrors as a result of the incident and will continue to suffer for the rest of his life. (T. at 12-13).

{¶21} Appellant also addressed the court on his own behalf and stated that the incident was "a very tragic accident" and that he was "very sorry." (T. at 17).

{¶22} Before the trial court sentenced Appellant, it engaged in the following exchange with Adult Court Services Officer Lisa Lyons:

{¶23} THE COURT: * * * Lisa, correct me if I'm wrong, there's two problems here today that I'm facing. The examination of [the victim] indicated that there was possibly prior abuse. Is that correct? There was [sic] some healed ribs, I believe-

{¶24} LISA LYONS: Right. According to the information.

{¶25} THE COURT: -that might have been fractured within a week prior to this event here. And you made the statement that [Appellant] apologizes because he wasn't immediately candid. To this day, he hasn't been candid. He hasn't told us what happened that night, and I don't think he intends to. That's all I have to say regarding [Appellant's] position on this matter. (T. at 17-18).

{¶26} The trial court sentenced Appellant to a term of imprisonment of seven (7) years.

{¶27} Appellant now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶28} "I. APPELLANT'S SENTENCE IS IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS AND IS CONTRARY TO LAW BECAUSE THE TRIAL COURT ERRED IN RELYING ON UNSUBSTANTIATED EVIDENCE OUTSIDE THE RECORD INVOLVING ALLEGED OTHER ACTS WHEN IMPOSING APPELLANT'S SENTENCE.

{¶29} "II. THE APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS BY THE TRIAL COURT ALLOWING MULTIPLE VICTIM IMPACT STATEMENTS AND BY DENYING APPELLANT EQUAL OPPORTUNITY TO PRESENT MITIGATING EVIDENCE AT SENTENCING."

**I.**

{¶30} In his First Assignment of Error, Appellant argues that his sentence is contrary to law because the trial court relied on unsubstantiated facts outside of the record. We agree.

{¶31} In *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, ¶4, the Supreme Court of Ohio set forth the following two-step approach in reviewing a sentence:

{¶32} In applying *Foster* [*State v.,* 109 Ohio St.3d 1, 2006–Ohio–856] to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.

{¶33} If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard. In order to find an abuse of discretion, we must

determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶34} This Court reaffirmed our reliance on the *Kalish* standard of review in *State v. Bailey,* 5th Dist. Ashland No. 14–COA–008, 2014–Ohio–5129, ¶ 18–24.

{¶35} Upon review, we find the record demonstrates that the trial court considered the overriding purposes of felony sentencing under R.C. §2929.11 as well as the seriousness and recidivism factors under R.C. §2929.12 when imposing sentence. The court also imposed a sentence of 7 years, which is within the statutory range (2, 3, 4, 5, 6, 7, or 8 years) for a second degree felony under R.C. §2929.14(A)(1). Appellant has not claimed error as to the imposition of post-release control. Accordingly, we conclude that Appellant's sentence is not clearly and convincingly contrary to law.

{¶36} We next address Appellant's contention that the court erred in considering possible prior abuse which constituted "improper factual findings as to unrelated, unsubstantiated other acts which were outside the record."

{¶37} As set forth above, immediately prior to imposing sentence, the trial court stated: "… there's two problems here today that I'm facing. The examination of [the victim] indicated that there was possibly prior abuse. Is that correct? There was [sic] some healed ribs, I believe --- that might have been fractured within a week prior to this event here."

**{¶38}** Initially, we note that the statements regarding possible prior abuse and injuries were contained in the PSI, which counsel for Appellant had reviewed prior to sentencing and did not raise any objections thereto.

**{¶39}** Generally, the trial court is not limited to only considering the facts related directly to the conviction. *State v. Bowsher,* 186 Ohio App.3d 162, 2010–Ohio–951, 926 N.E.2d 714 (2d Dist.). Courts have historically been permitted to consider hearsay evidence, evidence of an offender's criminal history, the facts concerning charges dismissed, and even offenses for which charges were not filed, but were addressed in the presentence investigation ("PSI"). *Id.* When imposing sentence, the trial court may consider and refer at sentencing to information contained in the PSI, any statement from the defendant or his victims, or any other evidence in the record. *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 37. There is no statutory guidance for what information may be contained in the PSI. *State v. Hutton* (1990), 53 Ohio St.3d 36, 43. However, R.C. §2929.12(A)(1) requires that the report include the circumstances of the crime, the defendant's prior criminal record and "such information about defendant's social history * * * as may be helpful in imposing or modifying sentence * * *." *Id.* The Ohio Supreme Court has "held that the concept of 'social history' is broad enough to include allegations of wrongdoing even though the wrongdoing did not result in criminal charges." *Id.,* citing *State v. Cooey,* 46 Ohio St.3d 20, 35, 544 N.E.2d 895 (1989); *see, also, State v. Eley,* 77 Ohio St.3d 174, 1996-Ohio-323.

**{¶40}** However, it has also been held that the ability of the trial court to consider evidence of other offenses for which there was no conviction is not completely unfettered. *See State v. Blake,* 3d Dist. Union No. 14–03–33, 2004–Ohio–1952. "The

trial court's consideration cannot indicate a bias toward the defendant indicating that the trial court believes that the defendant is guilty of the charges which were dismissed." *Id.* at ¶5. "[W]e have recognized that a trial court is not vested with authority to consider allegations of conduct that have not been adjudicated in a court of law." *State v. Hartley,* 3d Dist. Union No. 14–11–29, 2012–Ohio–4108, ¶ 33. "Allowing a sentence to be imposed on the basis of such conduct 'would permit a defendant to be punished for offenses without a trial or an opportunity to defend oneself by cross-examining the witnesses.' " *State v. Montgomery,* 3d Dist. Crawford No. 3–08–10, 3–08–11, 2008–Ohio–6182, ¶ 13 (quoting *State v. Park,* 3d Dist. Crawford No. 3–06–14, 2007–Ohio–1084).

{¶41} Based on the foregoing, we find the trial court was clearly permitted to consider any allegations of Appellant's previous wrongdoings. However, in the present case, there is absolutely no evidence that H.H.'s prior injuries were caused by Appellant.

{¶42} While this Court finds that the record and the severity of H.H.'s injuries fully support the sentence imposed by the trial court, due to the trial court's reference to H.H.'s prior injuries immediately prior to its imposition of sentence, this Court is unable to determine whether the trial court took such prior injuries into consideration when it imposed sentence. For that reason alone, we remand this matter for re-sentencing without consideration of the prior abuse and injuries.

{¶43} Appellant's First Assignment of Error is sustained.

**II.**

**{¶44}** In his Second Assignment of Error, Appellant argues the trial court erred in allowing multiple victim impact statements and by denying Appellant the opportunity to present mitigating evidence at sentencing. We disagree.

**{¶45}** R.C. 2929.19(A) provides in part:

At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative in accordance with section 2930.14 of the Revised Code, and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case.

**{¶46}** R.C. §2930.01 defines "victim's representative" as "a member of the victim's family or another person who pursuant to the authority of section 2930.02 of the Revised Code exercises the rights of a victim under this chapter."

**{¶47}** R.C. §2930.02(A) allows a representative to speak on behalf of the victim if the victim is a minor or deceased.

**{¶48}** As stated in the above recitation of the facts, two individuals addressed the court prior to sentencing: Lora Miller, the child's mother, and Nicole Williams, the child's step-grandmother. (T. at 6, 10).

**{¶49}** Upon review of their statements, we find that while not officially designated by the court as the "victim's representative", Ms. William's statement, which was actually a statement prepared by the child's stepmother, was, in effect, a victim impact statement as she testified as to the child's injuries, his pain following the amputation, the night terrors he suffers, the nine (9) surgeries he has had at the time of sentencing

including skin grafts, the need for a new prosthetic limb every 2-3 years and the limitations he will be facing in life.

**{¶50}** Ms. Miller's statement, however, was not a victim impact statement. Her statement was a reading of the letter she wrote, which was one of the 23 letters attached in support of Appellant's own Sentencing Memorandum. Ms. Miller's letter contained only mitigating evidence in support of Appellant's good character, her belief in his innocence, and his love for her and the child.

**{¶51}** Based on the foregoing, we find the trial court did not abuse its discretion in allowing both statements to be read prior to sentencing. We further find that mitigating evidence was presented on Appellant's behalf via Ms. Miller's statement.

**{¶52}** Appellant's Second Assignment of Error is overruled.

**{¶53}** For the foregoing reasons, Appellant's sentence is vacated and this matter is hereby remanded to the trial court for re-sentencing in accordance with the law and this opinion.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

JWW/d 0710