The STATE of Ohio, Appellee,

v.

BOWSER, Appellant.

[Cite as *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23555.

Decided March 12, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine, Assistant Prosecuting Attorney, for appellee.

John D. Smith Co., L.P.A., John D. Smith, and Andrew P. Meier, for appellant.

---

BROGAN, Judge.

{¶ 1} "My object all sublime

I shall achieve in time—

To let the punishment fit the crime—

The punishment fit the crime."

Gilbert and Sullivan, The Mikado (1885), A more humane Mikado.

{¶ 2} Ralph Bowser appeals what he believes is a punishment that does not fit the crime. Under a plea agreement, the prosecutor ceased prosecuting an indicted count of gross sexual imposition, and Bowser pleaded no contest to a misdemeanor charge of child endangerment. Despite the nonsexual nature of his plea, the trial court conditioned its community-control sanction on, among other things, Bowser being supervised by a sex-offender specialist and successfully completing a male-sex-offender treatment program. By imposing these conditions, Bowser argues, the court abused its discretion and violated his procedural due-process rights under the United States and Ohio Constitutions.

{¶ 3} We disagree. We think that the trial court could reasonably believe that based on the presentence investigation report ("PSI"), its punishment fit Bowser's true crime, and that the conditions fit what the court saw as the facts underlying the offense to which he pleaded. Therefore, we will affirm.

## I

{¶ 4} In April 2008, the grand jury indicted Bowser on one count of gross sexual imposition with a substantially impaired person, a violation of R.C. 2907.05(A)(5) and a fourth-degree felony. Prompting the indictment had been Bowser's stepdaughter S.E.'s allegations that he had sexual intercourse with her. Bowser often cared for S.E. during the day—she has significant mental impairment—when he lived with S.E. and her mother, his former wife. (Bowser had since moved out because he and S.E.'s mother separated and were pursuing divorce.) Not until June 2009 did Bowser reach a plea agreement with the prosecutor. The prosecutor agreed to cease prosecution (nolle prosequi) of the indicted felony, and Bowser agreed to plead no contest to a bill of information that charged him with the misdemeanor offense of child endangerment, a violation of R.C. 2919.22(A).

{¶ 5} On the same June day that the prosecutor filed the bill of information, the trial court held a plea hearing during which it accepted Bowser's plea of no contest and found him guilty as charged. The court then ordered that a PSI be completed before it sentenced him. Finally, near the end of the hearing, referring to his sentence, the court said to Bowser, "I'll be looking at everything carefully, and as a result of all the information that's provided to me, I'll be able to make a decision, all right?" "Yes, Your Honor," replied Bowser.

{¶ 6} Roughly a month later, Bowser reappeared before the court for sentencing. After defense counsel spoke, the court allowed S.E.'s mother to speak. Her mother told the court of the terrible effects that Bowser's abuse had on the family and on S.E.; she characterized the abuse as both physical and sexual. She concluded by reading a statement from S.E. to the judge in which S.E. told the judge that Bowser had sexually abused her. Almost immediately after S.E.'s mother finished speaking, and without any introductory comments, the court sentenced Bowser to 15 days in jail and community control. The community-control conditions the court imposed on Bowser included the provisions that while on probation he be supervised by a sex-offender specialist and that he attend and successfully complete a male-sex-offender treatment program.

{¶ 7} Bowser timely appealed his sentence, and he now contests these two conditions.

## II

{¶ 8} Bowser argues that the trial court's decision to impose the contested conditions is erroneous for two reasons: (1) the decision reflects an abuse of discretion and (2) the conditions violate his procedural due-process rights under the United States and Ohio Constitutions. We are not persuaded by either reason.

## A

{¶ 9} Bowser's first assignment of error reads:

{¶ 10} "The trial court abused its discretion in sentencing Bowser to sexually related community control sanctions where he entered a no contest plea to a nonsexual offense."

{¶ 11} In essence, Bowser argues that the court cannot impose the community-control conditions on him because he pleaded no contest only to a nonsexual offense and stipulated only to nonsexual facts. We do not think the trial court abused its discretion. See *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, at ¶ 6 (applying this standard in its review of a juvenile

court's community-control condition).  The conditions are within legal limits and justified by the record.

{¶ 12} The misdemeanor sentencing statutes give courts broad discretion to fashion sentences that are appropriate to each case.  See R.C. 2929.22(A).  An appropriate sentence, according to the statutes, is one reasonably calculated to achieve the statutory purposes and principles of sentencing.  See R.C. 2929.22(A); see also R.C. 2929.21(B).  The purposes of sentencing are two-fold—to protect the public and to punish the offender.  R.C. 2929.21(A).  And a principle of sentencing is that sanctions should be designed with an eye to changing the offender's behavior and rehabilitating him.  See R.C. 2929.21(A).  So when deciding what conditions should accompany a community-control sanction, courts must consider how to achieve these purposes and principles in the unique circumstances of the particular case.  See *In re D.S.* at ¶ 6 (juvenile courts must consider the statutory purposes of juvenile disposition when determining conditions under a community-control sanction).

{¶ 13} From these purposes and principles, it follows that "[p]robationary conditions are to be related to the circumstances of the offense." *In re D.S.* at ¶ 16, citing *State v. Jones* (1990), 49 Ohio St.3d 51, 550 N.E.2d 469.  Bowser claims that the contested conditions in his case are entirely unrelated to child endangerment.  He seems to think that courts mechanically dispense sentences based on the conviction offense alone—or at least he appears to think courts ought to sentence this way.[1]  But sentencing statutes, for the most part, do not prescribe a specific sentence for a particular offense.  Rather, for each offense, the statutes generally give courts a range from within which to choose a sentence appropriate to the particular circumstances of the case.  The circumstances that a court considers encompass a broad range of information.

{¶ 14} The practice of considering so much information before sentencing has deep historical roots in this country.  The United States Supreme Court has said that "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v. New York* (1949), 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337.  The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned, like it was during trial, with the narrow issue of guilt.  See

---

1.  Were Bowser correct, scarce judicial resources would be conserved simply by placing a computer on the bench of each sentencing court.

id. at 246–247, 69 S.Ct. 1079, 93 L.Ed. 1337. For this reason, the sentencing process is "less exacting than the process of establishing guilt." *Nichols v. United States* (1994), 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745. The court's aim is to "impos[e] an appropriate sentence based upon the seriousness of the crime committed and the character of the defendant." *State v. Cassidy* (1984), 21 Ohio App.3d 100, 101, 21 OBR 107, 487 N.E.2d 322, citing *State v. Barker* (1978), 53 Ohio St.2d 135, 150–151, 7 O.O.3d 213, 372 N.E.2d 1324. Included in the circumstances of an offense, then, is the offender himself. Indeed, "a prevalent modern philosophy of penology," the Supreme Court has said, is "the punishment should fit the offender and not merely the crime." *Williams* at 247, 69 S.Ct. 1079, 93 L.Ed. 1337. The court continued, "Highly relevant—if not essential—to [the court's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Id. Indeed, our Supreme Court has said that "the function of the sentencing court is to acquire a thorough grasp of the character and history of the defendant before it." *State v. Burton* (1977), 52 Ohio St.2d 21, 23, 6 O.O.3d 84, 368 N.E.2d 297.

{¶ 15} To acquire this grasp, it is well established in Ohio law that the court may consider information beyond that strictly related to the conviction offense. For example, the statute governing the contents of a PSI report simply says, "[T]he officer making the report shall inquire into the circumstances of the offense and the criminal record, social history, and present condition of the defendant." R.C. 2951.03(A). The statutory directive no doubt results in the sentencing court considering evidence that would be inadmissible at trial, *State v. Davis* (1978), 56 Ohio St.2d 51, 10 O.O.3d 87, 381 N.E.2d 641—like hearsay—and results in the court considering evidence entirely unrelated to the conviction offense. See *Gregg v. United States* (1969), 394 U.S. 489, 492, 89 S.Ct. 1134, 22 L.Ed.2d 442. So, the court may consider the offender's prior arrests, even if none yields prosecution. *Burton* at 23, 6 O.O.3d 84, 368 N.E.2d 297 ("it is well-established that a sentencing court may weigh such factors as arrests for other crimes"). The court may also consider facts that support a charge of which the offender is ultimately acquitted. *State v. Wiles* (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97, quoting *United States v. Donelson* (C.A.D.C.1982), 695 F.2d 583, 590 (" 'It is well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted' "). The court may even consider mere allegations of crimes for which the offender is never prosecuted. *State v. Cooey* (1989), 46 Ohio St.3d 20, 35, 544 N.E.2d 895 (allegations of uncharged criminal conduct found in a PSI report may be considered as part of the offender's social history).

{¶ 16} And we have said that a sentencing court may consider a criminal charge and supporting facts that are dismissed under a plea agreement. In *State v. Blake* (June 11, 1999), Montgomery App. No. 17355, 1999 WL 375576, the offender had been originally charged with the violent offense of aggravated robbery, accompanied by a firearm specification. But under a plea agreement, the prosecutor had dismissed the specification and the offender pleaded guilty to a reduced charge of robbery, a nonviolent offense. In sentencing the offender, however, the trial court clearly had believed the allegations supporting the original charge—that the offender used a gun to commit the robbery. Because of this belief, the court had imposed the maximum sentence.

{¶ 17} In his appeal, the offender argued that since he pleaded guilty to a nonviolent crime and the firearm specification was dismissed, the court abused its discretion by considering the allegations that the defendant used a gun. We concluded that regardless of the plea agreement, based on the evidence presented at the hearing and the information in the PSI report, the trial court could reasonably believe that the defendant in fact did use a gun to commit the robbery. The agreement, we said, changed none of the underlying facts and circumstances of the offense. Rather, the prosecutor agreed to reduce the aggravated-robbery charge and to dismiss the firearm specification for other, unrelated reasons—such as to obtain a guilty plea and to avoid a trial. Nothing prohibited the court, we said, from considering what it regarded as the underlying facts. See *State v. Frankos* (Aug. 23, 2001), Cuyahoga App. No. 78072, 2001 WL 958062 (a plea agreement does not bar a sentencing court from considering underlying facts), and *State v. Mayor*, Mahoning App. No. 07 MA 177, 2008-Ohio-7011, 2008 WL 5451377, at ¶ 17 ("the sentencing court can consider the circumstances of the offense for which the defendant was indicted, even if he negotiated a plea at odds with the indicted elements"). We affirmed the sentence because it was within statutory limits and was justified by the record.

{¶ 18} Consideration of the underlying facts in no way abrogates the offender's plea agreement, as *State v. Huntley*, Hocking App. No. 02CA15, 2002-Ohio-6806, 2002 WL 31769238, explains. In that case, the offender had been indicted originally on three counts of rape, two counts of gross sexual imposition, and one count of disseminating harmful matter to juveniles. But under a plea agreement, the offender had pleaded no contest to three reduced charges of gross sexual imposition and the prosecutor had dismissed the remaining charges. At sentencing, the trial court had been clear that in deciding the offender's sentence, it placed particular emphasis on the allegations of rape in the PSI report that supported the original charges.

{¶ 19} In his appeal, the offender argued that the court could consider only the stipulated facts in the plea agreement. Since the stipulated facts did not reflect

the rape allegations in the PSI report, he argued, the court improperly considered them. The *Huntley* court disagreed. The benefit of the plea agreement to the offender, said the court, is that the pleaded offense limited the maximum sentence that the court could impose by in effect constructing a statutory ceiling. *Huntley* at ¶ 12. The offender received the benefit of his plea agreement when the court imposed a sentence within the statutory limits for the pleaded offense. Id. But, said the court, in fashioning a sentence within the statutory limits, the "court[ ] may consider the real facts behind a plea agreement." Id. To determine the true facts, said the court, the sentencing court could properly rely on the PSI report. Id. at ¶ 18. Thanks to "real-offense sentencing," then, even though an offender can use a plea agreement to lower the maximum sentence he could receive, he cannot entirely escape the true facts of his offense.

{¶ 20} As both *Blake* and *Huntley* demonstrate, based on how the court perceives true facts in a case, it may believe that the offender committed a crime other than, or in addition to, the one to which he pleaded. In *State v. Thompson,* Clark App. No. 2001–CA–99, 2002-Ohio-4123, 2002 WL 1832918, the offender had been charged originally with rape but pleaded guilty to unlawful sexual conduct with a minor. The PSI report had revealed that the accounts of the sexual encounter reported by the offender and the victim were markedly different. The trial court had believed the victim's account and consequently believed that the offender raped her. Because of this belief, the court had sentenced the offender to the statutory maximum. On appeal, the offender argued that this was inappropriate. We disagreed and said that the trial court could believe the victim's rape account, making the sentence reasonable. Similarly, in the case of *State v. Hofmann,* Erie App. No. E–03–057, 2004-Ohio-6655, 2004 WL 2848938, the offender had pleaded guilty to gross sexual imposition. He had objected to the number of times that sexual contact occurred between them as alleged by the victim in the PSI report. On appeal, the offender argued that the sentencing court erred by considering the allegation because it was never charged, proven, or admitted. The court rejected this argument, saying that the offender was merely contesting the victim's version of the events. The sentencing court did not err, concluded the court, by choosing to believe the victim's allegation.

### Bowser's PSI report justifies the conditions

{¶ 21} Bowser does not contend that the conditions he contests are unlawful, only that they are outside the statutory limits for child endangerment. So we must examine the record and determine whether the contested conditions relate to the circumstances surrounding Bowser's offense. That is, we must determine whether the trial court's evident belief that he committed some form of sexual misconduct, despite his no-contest plea to a nonsexual offense, is justified by the evidence in the record. We need look no further than the PSI report (filed under

seal on our order). Bowser does not argue that the sexual-misconduct allegations recorded in the report should not be there but, similar to the offenders in *Blake* and *Huntley*, he claims that the court could not consider any of them. Bowser contends rather that the court could consider only the nonsexual information relating to child endangerment. Not surprisingly, given our discussion above, we think Bowser is wrong.

{¶ 22} Turning to the report, the "OFFENSE SECTION" begins with a report of the offense, which reads like (and perhaps is) the police report. The offense report starts out with the police receiving a complaint of a possible sex offense and ends with Bowser telling police that he would say no more without his attorney present, which he said at the police department after arriving for a pre-arranged interview. In between, we read that S.E. told her mother that when Bowser lived with them he had sexual intercourse with her. S.E. described to her mother where and, in somewhat graphic detail, how the act occurred. We read that she later was given a forensic interview at Care House and Children's Medical Center in Dayton. There, S.E. repeated what she told her mother, and she used dolls to demonstrate what Bowser did to her. He did it, S.E. said, about four times, and she said Bowser threatened to whip her if she told anyone. The PSI report continues with the offender's statement in which we read that Bowser adamantly denies any sexual misconduct occurred. The report ends with the probation officer's recommendation to the court. There, the officer wrote, "Mr. Bowser has not pled or been found guilty of a sex offense; however, the details of this case are of an obvious sexual nature; and therefore, need to be addressed." The officer recommends, in addition to 30 days in jail, a sanction of community control accompanied by several conditions, including, "[a] term of Probation Supervision with a Sex Offender Specialist" and "[a] requirement that the offender attend and complete male sex offender treatment."

{¶ 23} The trial court believed that its punishment fit Bowser's crime—not the crime to which he pleaded but the crime suggested by the underlying facts, as the court perceived them. Bowser received a considerable benefit from his plea agreement—the maximum punishment for felony gross-sexual-imposition almost surely would be greater than the misdemeanor punishment he received. But Bowser could not entirely escape the evidence regarding the circumstances of his offense. Before accepting his plea, the judge warned Bowser that her sentencing decision would likely be based on the PSI report, and again after accepting his plea, she warned him that she would "be looking at everything carefully" and would make a decision based on all the information given to her. For reasons we explained above, the trial court could believe the sexual-misconduct allegations in the PSI report. Based on those allegations, we think the court could reasonably find sexual misconduct in the facts underlying Bowser's offense. And given such

facts, we think the court's decision to impose the contested conditions is also reasonable. Moreover, the court's community-control sanction is designed to achieve the purposes and principles of sentencing, being fashioned with an eye to changing Bowser's behavior and rehabilitating him. We cannot say that the court abused its discretion.

{¶ 24} The first assignment of error is overruled.

### Second Assignment of Error

{¶ 25} "The trial court violated Bowser's procedural due process rights guaranteed by the United States and Ohio Constitutions when it imposed a term of probation supervision with a sex offender specialist and required him to attend and complete male sex offender treatment without any notice that he would be subject to such sanctions."

{¶ 26} Here, Bowser contends that the trial court did not tell him that he could be subject to these types of conditions. Nor should he have, Bowser contends, an expectation that the court could impose such conditions for a nonsexual offense. Finally, Bowser contends that the condition that he complete a sex-offender treatment program impinges upon his liberty because successful completion of the program would require him to admit sexual misconduct, which he always has denied. Curiously, Bowser does not argue in support of the first two contentions, plausible contentions that suggest that his plea was not entirely voluntary. But since he does not make this argument, and did not ask to withdraw his plea, we will consider only the third contention.

{¶ 27} Bowser claims that his liberty is impinged upon, violating his constitutional rights, because he must admit to sexual misconduct in order to complete a treatment program successfully. Bowser directs us to factually similar cases discussing the constitutional problems with forcing an offender to admit sexual misconduct in order to complete a treatment program when the offender did not admit to sexual misconduct at the plea hearing. But these cases can easily be distinguished on their facts. In each, the offender had tried to complete a treatment program but could not do so successfully because he refused to admit sexual misconduct, like the program required. Because he failed to satisfy a community-control condition, the trial court imposed additional sanctions, which the offender then appealed. Such is not the case here. Bowser does not claim, and we do not see it suggested anywhere in the record, that he entered a treatment program and was unable to complete it successfully. Nor do we see in the record what the specific requirements are of the program that he will enter. Anything we say on this issue, then, would be purely advisory. Not being in the

business of giving advice, but of resolving cases and controversies, we decline to consider this unripe issue.

{¶ 28} The second assignment of error is overruled.

### III

{¶ 29} Having overruled both assignments of error, Bowser's sentence is affirmed.

Judgment affirmed.

FAIN and GRADY, JJ., concur.