[Cite as *State v. McClanahan*, 2019-Ohio-1802.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-78 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-201 |
| | : | |
| DIAMOND MCCLANAHAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of May, 2019.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

RICHARD L. KAPLAN, Atty. Reg. No. 0029406, P.O. Box 751192, Dayton, Ohio 45475
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Diamond McClanahan appeals from his conviction and sentence following a negotiated guilty plea to one count of cocaine trafficking, a fifth-degree felony (F5), and one count of illegal manufacture of drugs, a second-degree felony (F2).

{¶ 2} McClanahan advances three assignments of error. First, he contends the trial court's imposition of a seven-year prison term for manufacturing .13 grams of fentanyl was not reasonably calculated to achieve the statutory objectives of sentencing. Second, he claims the trial court violated his due process rights by speculating and inventing victims who may have been harmed by purchasing fentanyl from him. Third, he asserts that his seven-year prison sentence for manufacturing fentanyl constituted cruel and unusual punishment because the sentence was disproportionate to sentences imposed in other cases.

{¶ 3} The record reflects that a grand jury indicted McClanahan on 11 counts based on drug evidence obtained when police executed a search warrant at his house. The charges were as follows: Count I cocaine trafficking (F5), Count II cocaine possession (F5), Count III aggravated drug trafficking (F3), Count IV aggravated drug possession (F5), Count V aggravated drug trafficking (F3), Count VI aggravated drug possession (F5), Count VII aggravated drug trafficking (F3), Count VIII aggravated drug possession (F5), Count IX aggravated drug trafficking (F3), Count X aggravated drug possession (F5), and Count XI illegal manufacture of drugs (F2). The indictment included specifications that the trafficking offenses were committed in the vicinity of a juvenile. The various possession and trafficking counts stemmed from the discovery of multiple drugs in McClanahan's apartment, including cocaine, fentanyl, acetyl-fentanyl, carfentanil, and

methamphetamine. Police also found digital scales, naloxone, and $4,376 in currency.

{¶ 4} McClanahan ultimately pled guilty to Count I cocaine trafficking (F5) (without the vicinity-of-a-juvenile specification) and Count XI illegal manufacture of drugs (F2). He also agreed to forfeit the cash. In exchange, the State agreed to dismiss all other charges and specifications (Plea Tr. at 15.) The parties also agreed that any prison sentences would be served concurrently. (*Id.* at 16.) The State recited the following factual basis for the plea:

> On September 6, 2017, at Clark County, Ohio, Clark County Sheriff's Office executed a search warrant at 408 and a half Chestnut Street, wherein Diamond McClanahan was found to be the leaseholder of that residence. Evidence showed items of drug trafficking was found inside that residence such as foil bindles, Narcan, syringes, and relevant to the case at bar less than 5 grams of cocaine. In the master bedroom closet of that residence where the cocaine was found, there was also items such as powdered sugar that, post Miranda, the defendant admitted to using to cut fentanyl to stretch the product of fentanyl and methamphetamine to persons he was selling drugs to. There was also $4,376 in U.S. currency that was seized from the residence on Mr. McClanahan, on his codefendant Christy Wilcox, and throughout the residence that is the proceeds of drug trafficking * * *.

(*Id.* at 18.)

{¶ 5} After engaging in a Crim.R. 11 discussion with McClanahan, the trial court accepted his guilty plea, made a finding of guilt, and ordered a presentence investigation (PSI). (*Id.* at 27.)

{¶ 6} At a subsequent sentencing hearing, the trial court heard arguments from counsel. McClanahan then spoke on his own behalf and stated: "I had no idea that all them drugs was in my house. I did put powdered sugar in what I did buy off the streets to help pay for my addiction, and I'm sorry that I'm addicted again; but what's done is done. So that's all I have to say. I'm sorry." (Sentencing Tr. at 8.) When questioned further by the trial court, McClanahan claimed most of the drugs found the in the house had been left there by prior occupants who were drug dealers. McClanahan asserted that he "had no idea that stuff was even there." (*Id.* at 9.) The trial court then addressed McClanahan as follows:

THE COURT: Do I look that stupid?

DEFENDANT: Sir?

THE COURT: Do I look that stupid?

DEFENDANT: No, you don't look stupid at all.

THE COURT: Well then quit lying to me.

DEFENDANT: Well, I have no way of proving.

THE COURT: Do you know how many times a drug buy was set up at your place?

DEFENDANT: It was only with powdered sugar, sir.

THE COURT: No, sir. It was fentanyl. In fact, according to the same notes from the officers, there was a deal on each of those occasions for them to go and buy fentanyl.

DEFENDANT: I have no way of proving any different.

THE COURT: So, you see, I understand the State's concern that when it

comes to the guidelines of the sentencing statute to punish the defendant and to protect the community. The Court has to take those words very seriously when somebody is selling such a deadly poison to people in the community for money, all those drugs, all that stuff set up in your apartment, in your closet that you didn't know about.

You know when drug people leave some place, unless of course, they're running out the back door because the police are at the front, they usually don't leave that kind of stuff behind.

The Court finds the following factors are applicable to this case:

As to [R.C.] 2929.12(B), I don't have anyone that's in these cases, in these charges, that's suffered serious physical harm as a result of the offense; but we've had so many people dying and almost dying from fentanyl in its various forms, it wouldn't be a very far jump to indicate some of them got their drugs from you.

In an interview with you with the police department after you were Mirandized, you admitted selling and manufacturing fentanyl. There was a codefendant who was selling the drugs for you.

As to the factors indicating recidivism is greater, you have a history of criminal convictions. You've not responded favorably to sanctions previously imposed for those convictions, and you show no genuine remorse for this offense or these offenses.

As to factors indicating recidivism is less likely, there's no prior adjudication of delinquency.

There is no military service record to consider.

The defendant scored high on the Ohio Risk Assessment Survey.

[R.C.] 2929.13 is not applicable because of the prior felony but also because Count Eleven is a felony of the second degree with mandatory prison sentence. Since it is a mandatory prison sentence, the defendant is not amenable for community control sanctions, then the court finds that such sanctions would in any event demean the seriousness of his conduct and impact upon the community.

[R.C.] 2929.13(D), again, these factors would only apply if, in fact, the Court had an option for something other than prison, so they're not applicable.

Taking all this into consideration, it's the order of the Court the defendant serve a prison term of 12 months on Count One. It's further ordered that he serve a mandatory prison term of 7 years on Count Eleven. By agreement of the parties, this will be ordered to be served concurrently.

(*Id.* at 9-12.)

**{¶ 7}** In his first assignment of error, McClanahan contends his second-degree felony conviction for illegally manufacturing drugs was predicated on him manufacturing .13 grams of fentanyl. He argues that a seven-year prison sentence for this offense was not reasonably calculated to achieve the objectives of felony sentencing.

**{¶ 8}** McClanahan's argument implicates R.C. 2929.11(A) and (B), which provide:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of

felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

{¶ 9} In support of his argument that a seven-year sentence was not reasonably calculated to achieve the objectives of felony sentencing, McClanahan reviews the statutory "seriousness" and "recidivism" factors in R.C. 2929.12. He contends none of the "more serious" factors in R.C. 2929.12(B) apply to him. With regard to the "less serious" factors in R.C. 2929.12(C), he argues that the "infinitesimal" amount of fentanyl he manufactured was a relevant consideration. As for the "recidivism" factors in R.C. 2929.12(D) and (E), McClanahan asserts that his criminal history was "minor" and related to drug and alcohol abuse. He also contends he expressed remorse at sentencing.

{¶ 10} With regard to the trial court's sentencing analysis, McClanahan claims it erred in relying on hearsay police notes, attributing drug sales to him for which he was not convicted, engaging in speculation and creating victims who were harmed by his drug sales, relying on a faulty risk-assessment tool, unfairly analyzing his criminal history, and ignoring the fact that he previously sought drug and alcohol treatment. As a result, he urges us to reduce his seven-year sentence to two years.

{¶ 11} Under R.C. 2953.08(G)(2), we may vacate or modify a sentence only if we determine by clear and convincing evidence that the record does not support the sentence or that it is otherwise contrary to law. Here McClanahan does not dispute the lawfulness of his seven-year sentence. It is within the authorized statutory range, and the trial court considered the statutory principles and purposes of sentencing and the statutory seriousness and recidivism factors, thereby making the sentence authorized by law. *State v. Folk*, 2d Dist. Montgomery No. 27375, 2017-Ohio-8105, ¶ 6-7. Therefore, we may vacate or modify McClanahan's lawful sentence only if we find by clear and convincing evidence that the record does not support it. We make no such finding here.

{¶ 12} As set forth above, McClanahan faced an 11-count indictment based on various drugs being found in his residence along with evidence that he was manufacturing and trafficking drugs. He obtained a plea deal that resulted in a guilty plea to two charges and an agreement for concurrent sentences. The indictment specified that the illegal-manufacturing charge under R.C. 2925.04(A) involved his manufacturing of fentanyl. But neither his conviction nor the available penalty depended on any particular quantity of fentanyl being manufactured. Moreover, for sentencing purposes, the trial court was not required to believe that McClanahan only was involved in manufacturing the .13 grams of

fentanyl found in his home. According to a bill of particulars accompanying the PSI report, McClanahan and his companion, Christy Wilcox, both admitted to selling drugs, and McClanahan admitted to manufacturing fentanyl. In addition, a search-warrant affidavit accompanying the PSI report reflected that confidential informants made four controlled buys of fentanyl from McClanahan or Wilcox prior to their arrest. Therefore, based on the information before it, the trial court reasonably could have inferred that McClanahan had done more than manufacture .13 grams of fentanyl and could have taken that fact into consideration when determining an appropriate sentence.

{¶ 13} We also are unpersuaded by McClanahan's complaint about the trial court considering hearsay police notes. In addition to the search-warrant affidavit, which detailed multiple controlled buys of fentanyl, the PSI report was accompanied by investigative notes in the form of an incident report from law-enforcement officer Justin Nawman. The notes contained the following information about McClanahan's criminal activity:

On September 6th, 2017 at 0950 hours the Clark County Sheriff's Office conducted a search warrant at 408½ Chestnut St. in the City of Springfield. The search warrant was conducted after a month and a half investigations were [sic] Diamond McClanahan and a Christy Wilcox were selling and distributing a compound mixture of fentanyl. * * *

During the initial entry a large quantity of crystal like substance in two clear grocery bags were located in the proximity of Diamond McClanahan bedroom/living room area [sic]. Also during the search a make shift closet located in the same living area contained materials used in the distribution

and manufacturing of fentanyl. (Scales, powder sugar, strainers, foil for packaging, naloxone, respiratory safety masks, and unlabeled pill bottles containing Gabapentin).

On the secondary search of the residence several other unknown powders and white sludge matter was located within the bathroom area. Presumptive tests where [sic] administrated which tested positive for cocaine and fentanyl. US Currency was also located within the confines of Diamond's clothing near his bed which was separated and taped in $500 denominations, estimated total of $4376 dollars.

* * *

Note: Before entry into residence Detective Fader was conducting counter surveillance in the 300 block of Chestnut St. During this time Detective Fader witness [sic] ongoing traffic from the residence, where subjects where [sic] pulling up to and going in for only several minutes and then leaving. Based on experience and field training in narcotic investigations, ongoing traffic at this residence can be relevant to selling and distribution of illegal narcotics.

On September 7th, 2017 at approximately 1800 hours interviews were conducted on Christy Wilcox and Diamond McClanahan. When speaking to Christy Wilcox (Mirandized), she admitted that she was selling for Diamond McClanahan. When asking if she was familiar with the large quantity of narcotics on scene, she stated no. * * *

During Diamond's interview (Mirandized), he admitted to selling and

manufacturing fentanyl. He continued to state that he was only a small dealer, only buying a few grams a couple times a day and netting in around $700 dollars in profit. When asked about the large quantity of a crystal substance in his residence, he stated that he was unfamiliar with that. He was then shown a picture of the substance that was recovered. He then stated that it appeared to be crystal meth, but he denied that it was his. He also assured detectives that his finger prints and DNA would not be located on packaging material used to hold the crystal substance. * * *

{¶ 14} Upon review, we see no error in the trial court considering the foregoing information, which accompanied the PSI report. A trial court is entitled to consider a wide variety of information at sentencing, including information contained in police reports. *See*, *e.g.*, *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 22-23 (2d Dist.). Nor did the trial court err in attributing drug sales to McClanahan for which he was not convicted. In *Bowser*, this court recognized that a sentencing court "may consider information beyond that strictly related to the conviction offense." *Id.* at ¶ 15. Such information includes the full circumstances of the offense as well as charges and supporting facts that are dismissed as part of a plea agreement. *Id.* at ¶ 15-17.

{¶ 15} We also reject McClanahan's argument that the trial court improperly speculated to invent victims who were harmed by his drug sales. The trial court explicitly stated that it was aware of no identified victims who had suffered serious physical harm as a result of his drug activity. It then added: "[B]ut we've had so many people dying and almost dying from fentanyl in its various forms, it wouldn't be a very far jump to indicate some of them got their drugs from you." Given McClanahan's admission to manufacturing

and trafficking fentanyl, the trial court reasonably inferred that it "wouldn't be a very far jump" to conclude that some area fentanyl victims had obtained their drugs from him.

{¶ 16} With regard to McClanahan's criticism of his ORAS risk-assessment score, trial courts routinely take those scores into consideration along with all other sentencing information. This court has cited a "high" risk-assessment score as a permissible sentencing consideration. *See*, *e.g.*, *State v. Dufner*, 2d Dist. Clark No. 2018-CA-82, 2019-Ohio-1142, ¶ 8; *State v. Kerr*, 2d Dist. Champaign No. 2018-CA-8, 2018-Ohio-4882, ¶ 5; *State v. Ropp*, 2d Dist. Champaign No. 2017-CA-32, 2018-Ohio-3815, ¶ 17. Here the trial court simply noted, in the course of its ruling, that "[t]he defendant scored high on the Ohio Risk Assessment Survey." We see no error.

{¶ 17} We also disagree with McClanahan's assertion that the trial court unfairly analyzed his criminal history. The trial court correctly noted that he had a history of criminal convictions, and it found that he had not responded favorably to prior sanctions and had not shown genuine remorse. McClanahan's criminal history was lengthy. Even excluding offenses committed in the 1980s and 1990s, his criminal history from 2004 to the time of sentencing in this case included 17 misdemeanor theft cases, receiving stolen property, misdemeanor assault, drug possession, attempted drug possession, two cases of criminal trespass, drug abuse, two cases involving drug paraphernalia, two cases of obstructing official business, and possession of drug-abuse instruments. Prior sanctions included community control, numerous jail sentences, suspended sentences, a substance-abuse treatment program, community service, and fines.

{¶ 18} It is true that McClanahan had only one prior felony conviction, which was for drug use. At sentencing, his attorney explained that a second prior felony offense was

"pled down to obstructing official business." (Sentencing Tr. at 7.) It also is true that the majority of McClanahan's convictions either were directly drug related or were property crimes such as theft, which may have been related to drug use. Nevertheless, despite the numerous lesser sanctions he received for these offenses and his prior completion of a treatment program, McClanahan proceeded to engage in the manufacturing and distribution of drugs from his residence. This fact supports the trial court's finding that he had not responded favorably to prior sanctions.

{¶ 19} Finally, the trial court reasonably concluded that McClanahan had not shown genuine remorse despite his apology. In conjunction with his statement of sorrow, he professed to have had "no idea that all them drugs was in my house." (*Id.* at 8.) He asserted that "prior drug dealers" had left most of the drugs in his house, and he "had no idea that stuff was even there." (*Id.* at 9.) In light of the information before the trial court, these claims defy belief and are indicative of a lack of responsibility or true remorse.

{¶ 20} Having reviewed the record, we do not find that it clearly and convincingly fails to support the trial court's imposition of a seven-year prison sentence for illegally manufacturing drugs in violation of R.C. 2925.04(A). The first assignment of error is overruled.

{¶ 21} In his second assignment of error, McClanahan contends the trial court violated due process by speculating and inventing potential victims who may have been harmed by purchasing fentanyl from him.

{¶ 22} McClanahan's due process argument focuses on the trial court's stating that it "wouldn't be a very far jump" to believe some fentanyl users had gotten the drug from him and had been harmed. As set forth above, the specific statement at issue is as

follows: "As to [R.C.] 2929.12(B), I don't have anyone that's in these cases, in these charges, that's suffered serious physical harm as a result of the offense; but we've had so many people dying and almost dying from fentanyl in its various forms, it wouldn't be a very far jump to indicate some of them got their drugs from you." (Sentencing Tr. at 10.)

{¶ 23} With regard to the seriousness of McClanahan's offense, the trial court simply appears to have been saying that no identified victim suffered serious physical harm, but it would not be unreasonable to believe such victims exist given the well-known danger of fentanyl. In the context of sentencing, the trial court was entitled to consider the fact that McClanahan's manufacturing and trafficking of fentanyl at least created a substantial risk, if not likelihood, of serious physical harm to someone, which is all the trial court appears to have been saying. We see no basis for a substantive or procedural due process argument arising from the trial court's remarks.

{¶ 24} McClanahan also repeats his challenge to the trial court's reliance on police notes to support its sentencing decision. He contends the trial court's mention of the "hearsay" notes "shifted the burden" to him to dispute the evidence. We disagree. At sentencing, the trial court was entitled to consider the notes, which were in the form of an incident report, even if they were hearsay. *See State v. Spencer*, 2d Dist. Clark No. 2017-CA-22, 2018-Ohio-873, ¶ 7-8 (upholding trial court's reliance on "law-enforcement investigation notes" at sentencing). McClanahan additionally alleges a due process violation based on the trial court's reference to his selling fentanyl from his house. But the sworn search-warrant affidavit that accompanied the PSI report referenced multiple instances of McClanahan and Christy Wilcox selling fentanyl from his house. And the law-enforcement investigative notes stated that McClanahan had admitted manufacturing and

selling fentanyl. Finally, the prosecutor's recitation of the factual basis for McClanahan's guilty plea mentioned him admitting to selling fentanyl. Once again, the trial court was entitled to consider all of this information at sentencing. The second assignment of error is overruled.

{¶ 25} In his third assignment of error, McClanahan contends his seven-year sentence for manufacturing fentanyl constitutes cruel and unusual punishment that is disproportionate to other cases of this type. He asserts that a sentence this severe for manufacturing .13 grams of fentanyl is shocking to any reasonable person and to the sense of justice of the community.

{¶ 26} Upon review, we find McClanahan's argument to be unpersuasive. As a threshold matter, he does not cite any other cases involving the manufacturing of fentanyl or other drugs with which to compare his case. In any event, his seven-year sentence was within the authorized statutory range and was not even a maximum sentence. Generally, a sentence that falls within the range authorized by statute cannot constitute cruel and unusual punishment. *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 21. In addition, as explained above, the trial court was not required to consider only the .13 grams of fentanyl found in McClanahan's house when determining an appropriate sentence. It was entitled to consider the entire record, including the full circumstances of the offense as set forth in the PSI report and accompanying information, the numerous charges dismissed under the plea agreement, and McClanahan's criminal history. Viewing the record as a whole, we see nothing shocking about his receiving a seven-year prison sentence for the illegal manufacture of drugs. The third assignment of error is overruled.

**{¶ 27}** The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies sent to:

John M. Lintz
Richard L. Kaplan
Hon. Richard J. O'Neill