[Cite as *State v. Klink*, 2022-Ohio-3844.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2022-CA-18 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-305 |
| | : | |
| MORGAN KLINK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of October, 2022.

. . . . . . . . . . .

MEGAN A. HAMMOND, Atty. Reg. No. 0097714, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
       Attorney for Plaintiff-Appellee

ADAM JAMES STOUT, Atty. Reg. No. 0080334, 5335 Far Hills Avenue, Suite 220, Dayton, Ohio 45429
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Morgan Klink was found guilty, following her guilty pleas, of involuntary manslaughter, with a firearm specification, and aggravated robbery. She was sentenced to an aggregate term of 23 years in prison. She appeals from her convictions.[1] We will affirm the judgment of the trial court.

{¶ 2} On August 24, 2018, Klink was indicted on murder, involuntary manslaughter and aggravated robbery, all felonies of the first degree; each count included a firearm specification. In the course of a robbery, Andrew Day, a clerk at a Hampton Inn in Greene County, was killed. Klink initially pled not guilty to the offenses, but on January 31, 2019, she entered a plea agreement with the State. Klink pled guilty to involuntary manslaughter and aggravated robbery and to both firearm specifications associated with those offenses; the parties agreed that the offenses were not allied offenses, and the State acknowledged that Klink could be sentenced on only one of the firearm specifications. Pursuant to the agreement, the count of murder was dismissed.

{¶ 3} At the plea hearing, the court advised Klink that she would have to serve a three-year prison sentence for the firearm specification, that she may be eligible for community control on the other offenses, but that the court would "probably impose a prison sentence" and wanted her to know that, "in fairness," before she entered her plea. Klink indicated that she understood.

{¶ 4} On September 30, 2021, Klink filed a sentencing memorandum. In the memorandum, Klink asserted that, at the time of her offenses (March 2018), she had agreed to drive three men while they robbed several businesses. While in jail, Klink

---

[1] On March 24, 2022, we sustained Klink's motion to file a delayed appeal.

eventually became cooperative with law enforcement, and she "gave several detailed interviews on the timeline and all of the planning and actions of those involved in the robberies" and the shooting of Andrew Day. Based upon her cooperation, she requested minimum sentences.

{¶ 5} At sentencing, the prosecutor stated that, a month before the offenses for which she was indicted, Klink and others had been involved in an aggravated robbery at the Fairfield Inn in Fairborn, Ohio. The prosecutor further advised the court that on the night of the robbery of the Hampton Inn and Day's death, the crime spree had started in Montgomery County at an Ohio Loan, with an attempted aggravated robbery committed by Klink and several of her co-defendants; Klink drove and provided a firearm in that instance. The group then went to Greene County, where Day was killed. According to the prosecutor, after Day was killed, the group returned to Montgomery County, where Tavion Garrett robbed a Subway the same night. Further, about ten days later, Klink "was then involved in multiple counts of trafficking" in Pike County, as charged in Pike C.P. No. 2018 CR 67; she was charged with the felonies of aggravated trafficking in methamphetamine, trafficking in cocaine, and aggravated possession of methamphetamine; the prosecutor advised the court that those counts had later been dismissed after Klink entered her plea in this case.

{¶ 6} The prosecutor also advised the court at sentencing that, while the case was pending, Klink had taken "advantage" of her counsel's having reviewed discovery with her, including a number of documents that had been stamped "for counsel only" and which included "the names and addresses of other innocent hotel guests" who were at the

Hampton Inn at the time of the offenses; "she stole from her attorney and then mailed and disseminated to other individuals" this witness information, including to one individual "who was locked up in Madison Correctional" for kidnapping, felonious assault and aggravated burglary. The State requested the maximum sentence.

{¶ 7} The trial court sentenced Klink to 11 years in prison for involuntary manslaughter, plus three years for the firearm specification, and to nine years for the aggravated robbery, to be served consecutively. It also ordered Klink to pay $200 in restitution to the hotel, for which she was jointly and severally liable with a co-defendant.

{¶ 8} In imposing consecutive sentences, the court indicated that the sentence was based in part on learning from the prosecutor that discovery material had "been disseminated and potentially putting yet another person in harm's way, life-threatening, potentially * * *." The court also concluded that Klink should serve the prison terms consecutively pursuant to R.C. 2929.14(C)(4), because consecutive service was necessary to protect the public from future crime or to punish Klink and was not disproportionate to the seriousness of her conduct and the danger she posed to the public. Further, the court found that at least two of the multiple offenses "were committed as part of one or more course of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any offenses committed as part of any of the courses of conduct adequately reflect the seriousness" of Klink's conduct. Finally, the court stated that Klink and her co-defendants had engaged in a course of criminal conduct involving multiple incidents of aggravated robbery with firearms during the overnight hours of March 7, 2018, in both

Montgomery and Greene Counties, which led to the death of Andrew Day.

{¶ 9} Klink appeals, raising two assignments of error.  Her first assignment of error states:

THE TRIAL COURT ERRED WHEN [IT] DID NOT ORDER A PRESENTENCE INVESTIGATION ["PSI"] WHEN THE TRIAL COURT STATED THE COMMUNITY CONTROL WAS TECHNICALLY AVAILABLE AND THERE WAS NO WAIVER BY BOTH THE STATE AND DEFENDANT.

{¶ 10} Klink asserts that she "was harmed" because no PSI was conducted, as "it would have provided additional information regarding her background" that would have been helpful to the trial court.

{¶ 11} Klink did not request a PSI.  "Absent a request for a presentence report in accordance with Crim.R. 32.2, no grounds for appeal will lie based on a failure to order the report, except under the most exigent of circumstances."  *State v. Adams*, 37 Ohio St.3d 295, 297, 525 N.E.2d 1361 (1988).

{¶ 12} Further, R.C. 2951.03(A)(1) provides: "Unless the defendant and the prosecutor who is handling the case against the defendant agree to waive the presentence investigation report, no person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court."  Crim.R. 32.2 provides: "Unless the defendant and the prosecutor in the case agree to waive the presentence investigation report, the court shall, in felony cases, order a presentence investigation

and report before imposing community control sanctions or granting probation."

{¶ 13} In *State v. Park*, 2d Dist. Champaign No. 2021-CA-41, 2022-Ohio-1524, ¶ 18, we concluded as follows:

> We find no error in the trial court's imposition of sentence without a PSI. Under the current versions of R.C. 2951.03 and Crim.R. 32.2, the trial court in a felony case must order and consider a presentence investigation report before imposing community control sanctions, *unless* the defendant and the prosecutor agree to waive the presentence investigation report. R.C. 2951.03 (effective Sept. 14, 2016); Crim.R. 32.2 (effective July 1, 2017). "The decision to order a presentence investigation generally lies within the sound discretion of the trial court if the court contemplates a prison term and not community control in sentencing upon a criminal offense." *State v. McCauley*, 5th Dist. Licking No. 19-CA-84, 2020-Ohio-2813, ¶ 43, citing *State v. Adams*, 37 Ohio St.3d 295, 297, 525 N.E.2d 1361 (1988).

{¶ 14} As noted above, the trial court advised Klink at the plea hearing that it was "going to impose a prison sentence" and that, while she may have been eligible for community control, she would have to serve three years on the gun specification. In *State v. Smith*, 3d Dist. Auglaize No. 2-06-37, 2007-Ohio-3129, the Third District determined:

> * * * Smith argues that probation was at issue because he was eligible for it on his underlying offenses. However, Smith was subjected to

a mandatory prison term for the firearm specifications, and the trial court did not consider placing him on probation for the underlying offenses, as evidenced by its imposition of maximum, consecutive sentences. Thus, Crim.R. 32.2 did not apply and the trial court was not required to order a PSI. Because neither community control sanctions nor probation were at issue, we find that the trial court did not err by failing to order a PSI.

*Id.* at ¶ 21.

**{¶ 15}** We agree with the State that, because the trial court was required to impose a prison term for the firearm specification and chose to impose prison terms for involuntary manslaughter and aggravated robbery, ordering a PSI was "discretionary."

**{¶ 16}** Because it was within the trial court's discretion not to order a PSI, Klink's first assignment of error is overruled.

**{¶ 17}** Klink's second assignment of error is as follows:

THE TRIAL COURT'S SENTENCE IS CONTRARY TO LAW.

**{¶ 18}** Klink argues that the trial court's "statements" in imposing consecutive sentences did not support consecutive sentences. She argues that the trial court's finding that the harm she had caused satisfied R.C. 2929.14(C)(4)(c) relied on conduct that "was not the subject of the case before the Trial Court or prior convictions"; in other words, she suggests that the court should have only relied on the Hampton Inn robbery and shooting, not the Subway and Ohio Loan robberies, which were not included in the charges against her in Greene County.

**{¶ 19}** As this Court has previously stated:

When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2).   *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7.   Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain statutes; or (2) the sentence is otherwise contrary to law.   *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

*State v. Houston*, 2d Dist. Montgomery No. 29114, 2021-Ohio-3374, ¶ 6.

**{¶ 20}** R.C. 2929.14(C)(4) provides:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

* * *

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses

of conduct adequately reflects the seriousness of the offender's conduct.

* * *

{¶ 21} In *State v. Delong,* 2d Dist. Clark Nos. 2021-CA-32, 2021-CA-33, 2022-Ohio-207, ¶ 9, quoting *State v. Derrick*, 2d Dist. Montgomery No. 28878, 2021-Ohio-1330, ¶ 13, we stated:

> "[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d. Dist.). The consecutive nature of the trial court's sentencing decision should therefore stand "unless the record overwhelmingly supports a contrary result." (Citation omitted.) *Id.* at ¶ 39.

{¶ 22} In *State v. Bodkins*, 2d Dist. Clark No. 2010-CA-38, 2011-Ohio-1274, ¶ 43, we stated:

> * * * This court has recognized that a trial court may rely on "a broad range of information" at sentencing. *State v. Bowser,* 186 Ohio App.3d 162, 926 N.E.2d 714, 2010-Ohio-951, ¶ 13. "The evidence the court may consider is not confined to the evidence that strictly relates to the conviction

offense because the court is no longer concerned * * * with the narrow issue of guilt." *Id.* at ¶ 14, 926 N.E.2d 714. Among other things, a court may consider hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, and facts related to a charge that was dismissed under a plea agreement. *Id.* at ¶ 15-16, 926 N.E.2d 714. "[B]ased on how the court perceives true facts in a case, it may believe that the offender committed a crime other than, or in addition to, the one to which he pleaded." *Id.* at ¶ 20, 926 N.E.2d 714.

**{¶ 23}** This Court has further noted:

* * * Even " '[u]nindicted acts * * * can be considered in sentencing without resulting in error when they are not the sole basis for the sentence.' " *State v. Cook*, 8th Dist. Cuyahoga No. 87265, 2007-Ohio-625, ¶ 69, quoting *State v. Bundy*, 7th Dist. Mahoning No. 02 CA 211, 2005-Ohio-3310, ¶ 86. *Accord Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, at ¶ 7 (quoting the same).

*State v. Wiles*, 2d Dist. Clark No. 2017-CA-69, 2018-Ohio-3077, ¶ 19.

**{¶ 24}** Here, pursuant to R.C. 2929.14(C)(4)(b), the trial court found that at least two of the multiple offenses were committed as part of one or more courses of conduct and that the harm caused was so great that no single prison term for any offense committed would adequately reflect the seriousness of Klink's conduct. Klink admitted in her sentencing memorandum that she drove three men while they robbed several businesses, and the court was free to consider that she was involved in the additional

robberies as part of a course of conduct. The court was also free to consider that Klink was initially charged with murder for the death of Andrew Day. It was also significant to the court that Klink improperly disseminated discovery material regarding the guests at the hotel on the night Day was killed. The record reflects that the court made the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporated them into its sentencing entry. Based upon the foregoing, we cannot clearly and convincingly find that the record does not support the trial court's findings. In other words, the record does not overwhelmingly support a contrary result, and Klink's second assignment of error is overruled.

{¶ 25} Having overruled Klink's assigned errors, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Megan A. Hammond
Adam James Stout
Hon. Aldolfo A. Tornichio