[Cite as *State v. Tyree*, 2021-Ohio-2217.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-26 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-631 |
| | : | |
| CHARLES TYREE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of June, 2021.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

JEFFREY HUNTER, Atty. Reg. No. 0061364, 119 West Columbus Street, Pickerington, Ohio 43147
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Appellant, Charles Tyree, appeals from his convictions for multiple counts of pandering obscenity involving a minor and voyeurism. He asserts on appeal that the trial court erred by allowing the State to make statements at the sentencing hearing regarding conduct unrelated to the offenses to which he pleaded guilty. Finding no merit in this argument, the trial court's judgment will be affirmed.

## Facts and Procedural History

{¶ 2} The Clark County grand jury indicted Tyree on eight counts: six counts of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(1), second-degree felonies; and two counts of voyeurism, in violation of R.C. 2907.08, fifth-degree felonies. Ultimately, Tyree pleaded guilty to two counts of pandering obscenity involving a minor (Counts 1 and 2), and the remaining counts were dismissed. The indicted conduct involved Tyree's then-ten-year-old daughter. Following completion of a presentence investigation report (PSI), the trial court conducted a sentencing hearing and sentenced Tyree to a prison term of 8 to 12 years on Count 1 and to 7 to 10 ½ years on Count 2. The trial court ordered that the sentences be served consecutively, for an aggregate prison sentence of 15 years to 19 years. This appeal followed.

## Analysis

{¶ 3} Tyree's sole assignment of error is as follows:

> The trial court erred by allowing the prosecutor to enter hear-say [sic] information negative to [Tyree] without any factual basis for said statements during [the] sentencing [hearing].

Tyree suggests that this error requires a remand to the trial court so that an untainted sentencing hearing may be conducted.

{¶ 4} In a statement included in the PSI, Tyree reported that he installed a camera in his bedroom, positioned in such a way that it would videotape individuals walking from the bedroom into the adjoining bathroom. At the time, Tyree was living with his ex-wife, who is also the mother of Tyree's ten-year-old daughter. Tyree asserted in the PSI statement that he installed the camera because he was fearful that his ex-wife and his wife were working together in some fashion to make it appear that he was sexually abusing his daughter. According to Tyree, the motive for their conduct was to prevent him from gaining custody of his daughter. Tyree further stated "that the camera must have caught [his daughter] walking to the shower after she had disrobed." Tyree additionally stated that, on two occasions, his daughter, who had "very long, thick hair," asked him to assist her as she washed her hair. Tyree stated that he was "uncomfortable" with the request, but that he agreed to assist his daughter on the condition that the event be videotaped. According to Tyree, his daughter agreed because she "had been informed * * * of the situation with his ex-wife * * * ." Tyree's PSI statement further claimed "that somehow [a video depicting his daughter in the shower] ended up in a chat room that is used for exchanging child pornography." Tyree made this claim despite his PSI admission that he was a member of the chat room, with the disclaimer that he was a chat room member "only because he works [with] different law enforcement agencies to try to trap child predators."

{¶ 5} At the sentencing hearing, Tyree made similar claims, stating in part as follows:

THE DEFENDANT: Yes, sir. Your Honor, thank you for the opportunity to speak here today. I would like to start by saying how deeply

and sincerely I - - I apologize for everything that's happened.

First, I would like to apologize to my daughter. I never meant to put you in harm's way. You along with your brothers and sister, are my world. I would die to keep you safe.

I love you all more than you could ever understand, and I'll always be here for you. Never think that any of this is your fault and most importantly I - - * * *

Next, I would like to apologize to the Court and the State of Ohio. I want to say that I take full responsibility for these two charges, and I want to express the fact that I would never intentionally hurt any child, especially my own.

As a survivor of childhood trauma, I would never, and could never, allow the same thing to happen to my children.

What started out as a true and honest and genuine attempt to protect my child, as well as myself, turned into something much worse. I'm truly a good and genuinely honest person. My background, my life history as well as my life devotion speaks to that. I've devoted myself to providing and protecting and caring for my children at the age of 16 before I even knew how to take care of myself.

I've devoted myself to doing so for my children and in many cases sacrificing myself and my future to provide for my family.

* * *

Disposition Transcript p. 4-5.

**{¶ 6}** The State, relying in part upon chat room conversations in the State's possession, then made the statement which is the subject of the pending appeal. The contested statement was as follows:

MR HESKETT: Yes, Your Honor, briefly. You Honor, we did the pre-sentence investigation and believe it to be fair and accurate.

I believe that Mr. Tyree struggles with a lot of his words where he said about not intending to harm his daughter, because those are lies. I believe in reviewing his version of the events, there is no accountability. There is no remorse. Instead he casts blame and then claims ignorance as to what he did.

He states, or the comments made are, that he sets this camera up to protect himself because he had heard there is allegations going to be made that he was sexually abusing his daughter.

In order to protect himself is by setting up a camera, and he says that his daughter was in on it, that she knew. She knew. His intentions were good. He was doing that to protect him.

He doesn't' have any idea how these videos, how these images, were uploaded on the child pornography website. The *Daddy Private Group* that he was a part of on the Kik application. It's simply untrue. He has no idea how they were posted in that chat room.

He said he admits to being a member of the child pornography chat room. The evidence is there and the text messages with his conversations will paint a clear picture of exactly what he was doing.

Your Honor, I believe this is the worse form of offense because he's not just downloading these images. In fact, he's creating them.

He's creating these images of his own daughter, the subject matter of the child pornography that he is creating and putting out there in the universe, out there for the internet, to explore and sexually gratifying himself to his daughter.

He is creating it with his 10-year-old daughter. His relationship with his daughter allowed him to get close to her, allowed her to trust him, allowed him the ability to do these things.

His words in these chats, you know, he's "finally not dealing with just collectors, ha ha." You know, he's creating these items. He's trying to not only just upload videos to get items in return, which he did.

His phone was filled with child pornography. But he's doing it in conversing about how to become sexually active. He's discussing this matter with other pedophiles in that group. How to become sexually active with his own daughter. So he's grooming her in these acts and exploring different techniques in how to do that.

Homeland Security, a member, gets into this private group, and he discusses these things with that member; and when asked if he's active, he says, "No, not yet." But he's working on it. He takes pictures every chance he gets. He does it when he's in the shower.

He has shower time with her. When he shares these images with other users, he makes statements to go along with the pictures. He says,

"Just got to watch my sexy daughter take a hot shower and help her. Nothing like watching soap roll down her body."

He uploads these pictures along with other ones that appear to be proof that: This is actually my daughter. It's my 10-year-old daughter. One is her just sitting innocently on the couch. This is, you know, me with her.

He's in the picture. His tattoos are evident in the shower with his daughter. He's right there. He can do that. He's grooming her.

When you go through some of these texts, I believe they are important because it just shows what he's doing. He's asked what he's into by another member of the group. He says, "Young, eight to twelve." The person says, "Prove you're real, mate."

He says, "Really? I have been in this chat long enough I don't have to prove anything. Ask around. You will get the proof you need. CT7632 Phillip Na." This is Charles Tyree. He shares pictures.

He's asked, "Are you active together?"

"I can't wait. LOL. It's going to be amazing."

Considering - - and then he gets into another discussion about someone had asked for exchanging, and he says, "Considering I posted on chat STR, sent to receive, do you really think I'm sending first? LOL. I've been screwed over way too much. I am real (inaudible) and (inaudible) my daughter, and will not be cheated. LOL."

And he's asked, "How old is she?"

"10."

"Active?"

"Not yet." Well, he asked the other user if they are active, and they said, "Yes."

He says, "Nice."

He's asked by another member of the group, "Would you let me cam with you and your daughter?" In other words watching with a video camera.

"Why."

"Because me and her don't come together just yet, working towards it. She's not ready for that yet."

"Cute. Has she seen your c***?" He's asked.

"Yes, a few times. She's walked in on me hacking off. I kept going. She just stood there watching."

He explains how stuff isn't that hard-core yet, but it's clear he's progressing.

He says he's sick of some of the people on the chat, "I just want to find someone to chat with and talk to and enjoys what I do."

"Hey, if you're legit, that's awesome, because I am as well." From these other individuals.

"I have my daughter. LOL. I get new stuff from her at least every other day."

Then he finds a girl out there that has sexual relations with her father.

"Oh okay, so I might have some questions for you. Maybe you can give me some advice."

"Okay, like?" She asks.

"Did you and your dad ever do anything? If so, what age? My daughter is 10. Now, I'm trying to work her towards it, but not sure if there's a better way."

She says that she's 16. That she was 10 and was - -

MR. HUNTER: Your Honor?

MR. HESKETT: - - just started working her here in the last two weeks."

"How cool"

"How far did you get?"

"Right now we do shower time."

MR. HUNTER: Your Honor, I hate to object. May we approach?

MR. HESKETT: I'm almost there, Your Honor.

MR. HUNTER: I think what we're doing is reading hearsay statements that really aren't part of the two counts. If we had tried the case, I would have had the opportunity to challenge these, but we reached an agreement on two counts.

I think what's being done now is getting statements in that would not be admissible as he's doing it now, and their credibility would be challenged in terms of a lot of things.

But the point is I think we are getting outside - - well, I know we are

getting outside the area of the two counts, and what it's doing is smearing my client with stuff to make him look worse than already these two charges do with this background stuff, which has not in any way been verified, frankly, and is not part of these charges but simply makes him look bad; but part of the reason to enter the pleas was to not do this, and now they are doing this.

THE COURT: Did you have a response?

MR. HESKETT: I believe this can be used to consider the sentencing. The hearsay statements are the statements of the defendant.

Multiple counts were dismissed in the plea agreement. Nothing was said that I could not put on record the facts of these chats.

I've got just two more to read and further they, you know, discount his version of the events as he lays out that his intentions were good and genuine, and that he has no idea how these items were put in the group.

THE COURT: I'll overrule the objection.

MR. HESKETT: Thank you, Your Honor.

"Right now we do shower time. That's why I'm slowly working on me touching her. Been getting pictures of her in the shower as well.

Accidentally slipping fingers in between legs, been wresting, LOL, smacking ass and grabbing (inaudible) clothes, things like that."

That's what he's going to do to her. That's what he's doing.

\* \* \*

Disposition Transcript p. 10-16.

{¶ 7} Finally, the trial court stated the following regarding its perspective concerning Tyree's lack of remorse and his failure to take responsibility for his conduct:

THE COURT: I don't find that the defendant has any genuine remorse. I don't believe he's taken responsibility for his actions.

He indicates in his statement to the probation department that he was a member of a child pornography chat room, but only because he worked alongside different law enforcement agencies to try and trap child predators.

That he has no idea how the videos got posted. He said he did not send any of the messages in the chat room. He said that the videos of his daughter were captured inadvertently because he had set up the camera to protect himself.

* * *

Disposition Transcript p. 17-18.

{¶ 8} We recently stated the following regarding the information a trial court may consider when making a sentencing determination:

* * * [A] trial court may rely on "a broad range of information" at sentencing. *State v. Bowser*, 186 Ohio App.3d 162, 926 N.E.2d 714, 2010-Ohio-951, ¶ 13. "The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." *Id*. at ¶ 14 * * *. Among other things, a court may consider hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, and facts related to a

charge that was dismissed under a plea agreement. *Id.* at ¶ 15-16 * * *. "[B]ased on how the court perceives true facts in a case, it may believe that the offender committed a crime other than, or in addition to, the one to which he pleaded." *Id.* at ¶ 20 * * *. Notably, a court may consider "allegations of uncharged criminal conduct found in a PSI report[.]" *Id.* at ¶ 15 * * *.

*State v. Butler*, 2d Dist. Champaign No. 2020-CA-14, 2021-Ohio-603, ¶ 7, quoting *State v. Bodkins*, Clark No. 10-CA-38, 2011-Ohio-1274, ¶ 43.

{¶ 9} Given the array of information a trial court may consider when coming to a sentencing decision, there was nothing inappropriate with the State's statements at the sentencing hearing. Moreover, the contested statements were made in reaction to Tyree's PSI and his own sentencing hearing statements, which attempted to deflect responsibility for the conduct to which he pleaded guilty. Such a response was fair and appropriate. But, even if the statements were objectionable, the trial court's conclusions regarding Tyree's lack of remorse and failure to take responsibility for his conduct were prompted by Tyree's statements, not anything said by the State at the sentencing hearing. Based upon these considerations, we overrule Tyree's sole assignment of error.

### Conclusion

{¶ 10} Having overruled Tyree's assignment of error, the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Ian A. Richardson
Jeffrey Hunter
Hon. Douglas M. Rastatter