[Cite as *State v. Ballard*, 2023-Ohio-3391.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 128 |
| | : | |
| SHON BALLARD | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 22, 2023

. . . . . . . . . . .

GLENDA A. SMITH, Attorney for Appellant

JANE A. NAPIER, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Shon Ballard appeals from his convictions, following his guilty pleas, on two counts of aggravated possession of drugs and three counts of aggravated trafficking in drugs. Specifically, Ballard objects to the consideration of certain information at his sentencing hearing. For the reasons discussed below, the judgment of the trial court is affirmed.

**Procedural History**

{¶ 2} Ballard was indicted on seven counts of aggravated trafficking in drugs and four counts of aggravated possession of drugs. He entered his guilty pleas on November 14, 2022, on the five counts on which he was convicted, and the other counts were dismissed. He was sentenced to an aggregate prison term of 95 months on February 9, 2023.

## Assignments of Error and Analysis

{¶ 3} Ballard raises two assignments of error on appeal. In his first assignment, he argues that the admission of certain evidence at his sentencing hearing was prejudicial. Specifically, Ballard asserts that the trial court erred in admitting Court's Exhibit 3, a portion of the presentence investigation report ("PSI") of a co-defendant, "because it substantiated the sentence which violated a substantial right." Ballard acknowledges that he did not object to the exhibit in the trial court, and that he is therefore limited to arguing plain error. He argues that admission of Court's Exhibit 3 violated his due process rights. Citing Evid.R. 403, Ballard also argues that the "probative value of * * * another person's PSI evidence" in determining his sentence was substantially outweighed by the danger of unfair prejudice and confusion of issues, and therefore his "sentence should be vacated." In response, the State argues that a trial court "may rely on an array of information in coming to a sentencing decision," and plain error is not demonstrated, and that Evid.R. 403 does not provide a limitation on the information the trial court may consider when imposing sentence.

{¶ 4} Ohio's criminal law distinguishes between errors to which a defendant objects in the trial court and those that he or she fails to raise in the trial court. *State v.*

*Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 17, citing *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14 and Crim. R. 52. "When the defendant forfeits the right to assert an error on appeal by failing to bring it to the trial court's attention in the first instance, an appellate court applies plain-error review." *Id.,* citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21-22. "An error qualifies as plain error only if the error is obvious and but for the error the outcome of the proceeding clearly would have been otherwise." *State v. Molen*, 2d Dist. Montgomery No. 21941, 2008-Ohio-6237, ¶ 9, citing *State v. Alexander*, 2d Dist. Montgomery No. 22278, 2008-Ohio-4131, ¶ 27. The defendant bears the burden of demonstrating plain error. *Jones* at ¶ 17. " 'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' *State v. Fahl*, 2d Dist. Clark No. 2013-CA-5, 2014-Ohio-328, ¶ 11, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 5} It is well established in Ohio law that, at sentencing, the trial court may consider information beyond that strictly related to the conviction offense. *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 15 (2d Dist.).

* * * For example, the statute governing the contents of a PSI report simply says, "[T]he officer making the report shall inquire into the circumstances of the offense and the criminal record, social history, and present condition of the defendant." R.C. 2951.03(A). The statutory directive no doubt results in the sentencing court considering evidence that

would be inadmissible at trial, *State v. Davis* (1978), 56 Ohio St.2d 51, 10 O.O.3d 87, 381 N.E.2d 641—like hearsay—and results in the court considering evidence entirely unrelated to the conviction offense. *See Gregg v. United States* (1969), 394 U.S. 489, 492, 89 S.Ct. 1134, 22 L.Ed.2d 442. * * *

*Id.*

{¶ 6} In *State v. Tyree,* 2d Dist. Clark No. 2020-CA-26, 2021-Ohio-2217, ¶ 9, we characterized what a court may properly consider in imposing sentence as an "array of information." We have previously described the broad "array" as follows:

* * * Ohio law is clear that " '[u]nindicted acts * * * can be considered in sentencing without resulting in error when they are not the sole basis for the sentence.' " *State v. Cook*, 8th Dist. Cuyahoga No. 87265, 2007-Ohio-625, ¶ 69, quoting *State v. Bundy*, 7th Dist. Mahoning No. 02 CA 211, 2005-Ohio-3310, ¶ 86. (Other Citation omitted.) In fact, "a trial court may rely on 'a broad range of information' at sentencing." *State v. Bodkins*, 2d Dist. Clark No. 10-CA-38, 2011-Ohio-1274, ¶ 43, quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13 (2d Dist.).

"The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." (Citation omitted.) *Bowser* at ¶ 14. "Among other things, a court may consider hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, and facts

related to a charge that was dismissed under a plea agreement." (Citation omitted.) *Bodkins* at ¶ 43. A court may also consider "allegations of uncharged criminal conduct found in a PSI report[.]" (Citation omitted.) *Bowser* at ¶ 15. *Accord State v. Scheer*, 158 Ohio App.3d 432, 2004-Ohio-4792, 816 N.E.2d 602, ¶ 13 (4th Dist.) (finding that "[a] court may consider a defendant's uncharged yet undisputed conduct when determining an appropriate sentence").

*State v. Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 8.

{¶ 7} At the beginning of Ballard's sentencing hearing, the court indicated that, to prepare for any sentencing proceeding, it considers the defendant's PSI. The court noted that Ballard's PSI was lacking in information because its "offense data narrative" included only a discussion of an April 19 traffic stop involving a co-defendant, who was found to have .22 grams of meth on her person at that time, and a May 28, 2022 traffic stop involving two other individuals. The court indicated that there was nothing else in the PSI that described "any of the possession offenses or expand[ed] on anything else" with regard to Ballard's offenses.

{¶ 8} The trial judge noted that, as the only judge in the Champaign Count Court of Common Pleas, he heard most of the cases in the absence of any conflict. The court observed that Ballard's case, the case of his co-defendant, and some other cases "were all kind of tied together" and that the co-defendant's PSI included an extensive discussion about the offenses, "kind of a more comprehensive accounting of conduct." The court indicated that it was "aware of more than what was in the PSI" in Ballard's case because

of the additional information in the co-defendant's PSI.   The court further stated:

> * * * I'm assuming that the Prosecutor, when you gave discovery to Mr. Ballard, that it was the same discovery you gave to Ballard as you did to [the co-defendant].   I mean, to me there would be no reason not to because everything emanated from 333 East Court Street.   And if, in fact, that is accurate, and the [co-defendant's] PSI, for example, was prepared off of that discovery, then what is in the [co-defendant's] PSI, in terms of the offense narrative, presumably would be the same stuff that should have been in the Ballard PSI.

{¶ 9} The court noted that the PSIs of the co-defendant and Ballard had been written by different people, and that it was not necessary for co-defendants to have the same PSI writers, but "if one has already written the police narrative portion of the PSI, then they need to know this is a co-defendant so that they can go back and just make sure the same information is shared."

{¶ 10} After making these observations, the court suggested that the narrative portion of the co-defendant's PSI be marked as a court exhibit and attached to Ballard's PSI.   The court advised the parties that they could review the narrative prior to sentencing.   The court stated that the main reason it wanted to handle the material that way was that the Court had been exposed to that information and had knowledge of the co-defendant's PSI, and it was a way for the attorneys to know what the court was considering, even though the information was also in the discovery materials.   The court stated that not making it clear what was being considered would be unfair to the parties,

and especially to the defendant, Ballard.

{¶ 11}  The State did not object to the admission of the co-defendant's narrative and agreed that, if the co-defendant's and Ballard's discovery was the same, there should be no surprise at sentencing.   The following exchange then occurred between the court and defense counsel:

THE COURT: Do you understand what the court's concern is in terms of fairness to you and your client with the Court having prior knowledge with another case about information and you guys not starting off on the same foot with me?

[DEFENSE COUNSEL]:   I do, yes.

THE COURT:   All right.   And do you have any objection to the Court including the [co-defendant's] narrative as part of this PSI?

[DEFENSE COUNSEL]:   Your Honor, I do not.   I would like to review it.

THE COURT:   Oh, you guys will have the opportunity to review. And you'll have the opportunity to discuss with your client.   And if you take the position that, hey, in light of what is also in there, you know, we would like to reschedule sentencing.   You will have to convince me, but I'm willing to consider it.   And the reason you'll have to convince me is because, presumably, you already know this information because you guys have had to deal with it for the last several months.

{¶ 12} The court then explained to Ballard that, upon a guilty plea, the prosecutor

sends the PSI writer a copy of the discovery to create a narrative. The court further advised Ballard that the co-defendant's PSI writer "replicated a bunch of law enforcement narrative" but that Ballard had had a different PSI writer who "did not replicate the contents of the investigation." The judge advised Ballard that, because he had also been the sentencing judge in the co-defendant's case, he knew things about the background of Ballard's case. The judge wanted Ballard to understand this fact, and Ballard indicated that he did.

{¶ 13} The court further advised Ballard, "whatever decision I make at sentencing, if the Court of Appeals or Supreme Court reviewed it, they would say, on what basis does the Judge know some of the issues? Some of the factors that he's pointed out because it is not [in] their PSI as it currently stands." The court continued that it felt compelled to disclose what it knew to Ballard "just to make sure we are all on the same [page]," regardless of whether the information was helpful or harmful. Ballard acknowledged his understanding.

{¶ 14} Finally, the court indicated that it had replicated pages 3 through 8 of the co-defendant's PSI narrative, which was marked as Court's Exhibit 3. It stated that this information was "based on the same discovery packet" and that copies would be provided to both parties and be treated as part of Ballard's PSI. The court then called a recess and advised defense counsel to advise the court when counsel and Ballard had finished their review of the narrative. After the recess, the court confirmed with defense counsel and the State that they had reviewed the narrative, confirmed with Ballard that he had reviewed the narrative with defense counsel, and confirmed that the parties were ready

to proceed to sentencing.

{¶ 15} We have reviewed Ballard's PSI and Court's Exhibit 3. The exhibit provides a detailed narrative of the Urbana Police Department's covert investigation of Ballard, who was also known as "Rotten," beginning August 15, 2021, when the department received a tip about drug activity at Ballard's residence at 333 East Court Street. As the court indicated, Ballard's own PSI detailed an April 19, 2022 traffic stop of his co-defendant, who also resided at 333 Court Street. Ballard's PSI further described a May 28, 2022 traffic stop of another driver and passenger.

{¶ 16} We conclude that plain error is not demonstrated in the court's use of a portion of the co-defendant's PSI. Ballard has not established how his sentence would have been different if the trial court had not admitted Court's Exhibit 3. Ballard pled guilty to multiple aggravated possession and trafficking offenses, and his PSI did not provide an accounting of the offenses, whereas Court's Exhibit 3 did. It was undisputed that the information in the narrative portion of the co-defendant's PSI had been provided to defense counsel in discovery. In other words, there was no information contained in Court's Exhibit 3 about which defense counsel and Ballard had been unaware. The trial judge, as the sole common pleas court jurist in Champaign County, was already very familiar with the information in the narrative portion of the co-defendant's PSI, having previously convicted the co-defendant, and the court admitted Court's Exhibit 3, which was limited to the narrative portion of the co-defendant's PSI only, to establish the source of some of the court's information for sentencing purposes. The trial court gave the parties ample time to review the exhibit prior to proceeding and diligently inquired of

counsel and defendant regarding any concerns about the court's considering the information in the exhibit   In his brief, Ballard does not dispute the accuracy of the information contained in the exhibit.   Further, Court's Exhibit 3 was not the sole basis for Ballard's sentence; Ballard had admitted in his own PSI to possessing and trafficking methamphetamine.

{¶ 17} Ballard's first assignment of error lacks merit and is overruled.

{¶ 18} Ballard's second assignment of error raises the issue of ineffective assistance of counsel.   Ballard asserts that he was prejudiced by defense counsel's failure to object to the admission of Court's Exhibit 3 because his sentence was "substantially affected" by the information contained in the exhibit   The State responds that Ballard admitted that he had received the information contained in the exhibit in discovery and, after having ample time to review the exhibit, neither defense counsel nor Ballard expressed surprise at its contents.   The State asserts that Ballard merely speculates that his sentence would have been different in the absence of the exhibit.

{¶ 19}   We review alleged instances of ineffective assistance of trial counsel using the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which has been adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). *See also State v. Blanton*, 2023-Ohio-89, 206 N.E.3d 14, ¶ 56 (2d Dist.).   To prevail on a claim of ineffective assistance, Ballard "must show that his trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him."   *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus.   In the absence of a showing of either

deficient performance or prejudice, a claim of ineffective assistance of counsel fails. *Blanton* at ¶ 56, citing *Strickland* at 697.

{¶ 20} To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29, citing *Strickland*.

{¶ 21} To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and Bradley at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 22} In reviewing ineffective assistance claims, we must not second-guess trial strategy decisions. *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932 (1998); *Strickland* at 689. Therefore, " 'trial counsel is allowed wide latitude in formulating trial strategy[.]' " *State v. Collins*, 2d Dist. Miami No. 2010-CA-22, 2011-Ohio-4475, ¶ 15, quoting *State v. Olsen*, 2d Dist. Clark No. 2009-CA-110, 2011-Ohio-3420, ¶ 121. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been

available." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

**{¶ 23}** Having concluded in our analysis of Ballard's first assignment of error that there was no plain error in the admission of Court's Exhibit 3, we cannot conclude that ineffective assistance is demonstrated in defense counsel's failure to object to the admission of the exhibit.   Further, Ballard was given ample opportunity to review the exhibit and to discuss it with defense counsel prior to sentencing, and Ballard did not contest the accuracy of the exhibit.   Ballard's second assignment of error is overruled.

**{¶ 24}** Finally, we note that on July 28, 2023, the trial court filed a nunc pro tunc entry purporting to correct a clerical error in the imposition of post-release control in Ballard's judgment entry of conviction, citing our decision in *State v. Grooms,* 2d Dist. Champaign No. 2022-CA-32, 2023-Ohio-2506. *See also* Crim.R. 36.  However, " '[a]lthough a court generally may issue a nunc pro tunc entry any time, * * * a notice of appeal divests a trial court of jurisdiction to do so.' " (Footnote and citations omitted.) *State v. Donley*, 2017-Ohio-562, 85 N.E.3d 324, ¶ 173 (2d Dist.).   Although a trial court's attempt to correct an error is commendable, the trial court lacked jurisdiction to file its amended judgment entry while this appeal was pending, and its nunc pro tunc entry had no legal effect.   However, nothing precludes the trial court from simply refiling its amended judgment entry after this appeal has been resolved.

**{¶ 25}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and LEWIS, J., concur.